**NOTICE:** This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

2022 IL App (3d) 210605-U

Order filed May 9, 2022

_____

IN THE

APPELLATE COURT OF ILLINOIS

THIRD DISTRICT

2022

| | | |
|---|---|---|
| *In re* D.S., | ) | Appeal from the Circuit Court |
| | ) | of the 10th Judicial Circuit, |
| a Minor | ) | Peoria County, Illinois, |
| | ) | |
| (The People of the State of Illinois, | ) | |
| | ) | |
| Petitioner-Appellee, | ) | Appeal No. 3-21-0605 |
| | ) | Circuit No. 18-JA-75 |
| v. | ) | |
| | ) | |
| D'Va S., | ) | Honorable |
| | ) | Timothy Cusack, |
| Respondent-Appellant). | ) | Judge, Presiding. |

_____

JUSTICE HOLDRIDGE delivered the judgment of the court.
Presiding Justice O'Brien and Justice Lytton concurred in the judgment.

_____

**ORDER**

¶ 1    *Held*:   The trial court did not err in terminating the mother's parental rights.

¶ 2    The respondent, D'Va S., appeals, arguing that the court erred in terminating her parental rights.

¶ 3                                    I. BACKGROUND

¶ 4        On February 21, 2018, the State filed a petition for adjudication of wardship in which it alleged that D.S. (born June 2016) was a neglected minor. In support of that allegation, the State asserted that on February 17, 2018, the minor was taken to the hospital with a fever of 101.5 degrees; was vomiting, lethargic, and pale; was found to have a hemoglobin level of 1.6 (whereas 14 was normal); and the symptoms would have been apparent for a length of time prior to that date. The minor was diagnosed with congestive heart failure. The father reported that the minor's diet consisted only of cow's milk and french fries, while the respondent reported the minor's diet to be chicken, roast beef, potatoes, apples, and popcorn. The respondent had the minor three days per week and the father had the minor four days per week. The respondent was previously indicated by the Department of Children and Family Services (DCFS) for inadequate supervision of the minor's sibling. An Order for Temporary Shelter Care was entered. The respondent admitted all the allegations in the petition but stated that she took the minor to well-child checkups, his condition was not apparent "because of the flu", and the minor's sibling was returned to her custody. She noted that the minor was subject to a child custody proceeding in DuPage County, but there was no order affecting custody or visitation. The court found D.S. to be neglected on April 25, 2018.

¶ 5        On May 30, 2018, following a dispositional hearing, the court found the respondent unfit, based on the contents of the petition and the contents of the court report regarding the respondent's participation and behavior before and after the events. The dispositional order required the respondent to perform the following tasks: (1) execute all authorizations for releases of information requested by DCFS to monitor and evaluate compliance; (2) cooperate fully with DCFS; (3) perform two random drug drops a month; (4) submit to a psychological examination and follow the recommendations; (5) participate and successfully complete counseling, including anger

management, and provide DCFS with proof of successful completion; (6) participate and successfully complete a parenting course or classes and provide proof of successful completion; (7) obtain and maintain stable housing; (8) provide the caseworker with any change in address and/or phone number; (9) provide the assigned caseworker with the requested information of any individual requested by DCFS; and (10) attend supervised visits with the minor and demonstrate appropriate parenting conduct during the visits. The respondent appealed from the dispositional order, and this court affirmed. *In re D.S.*, 2019 IL App (3d) 180415-U.

¶ 6        On September 14, 2020, the State filed a Petition for Termination of Parental Rights, alleging that the respondent was unfit pursuant to section 1(D)(m)(ii) of the Adoption Act (Act) (750 ILCS 50/1(D)(m)(ii) (West 2020)), in that she failed to make reasonable progress toward the return of the minor during the nine-month period of December 2, 2019, to September 2, 2020.

¶ 7        A hearing on the State's termination petition was held on November 10, 2021. After the adjudication hearing, the court found that the State met its burden as none of the services had been completed and the respondent had made no effort to complete them. The court, thus, found the respondent unfit. The respondent does not appeal from this finding.

¶ 8        The matter proceeded to the best interest hearing. The best interest report stated that the minor's current foster placement was willing and able to adopt him. When the minor was placed in the home on February 19, 2018, he was one year and eight months old. At the time of the report, he was five years old. The minor's basic needs of food, shelter, health, and clothing were being met by his caregivers. The caseworker had at least monthly contact with the minor and his foster parents in the home and observed that it had adequate food, was in a good state of repair, and was adequate for the family size. The minor and his foster parents reside in a two-story house in a good

3

neighborhood. There are other families in the area with young children. The minor is involved in the community through church.

¶ 9    The minor was in good health and up to date on all his medical needs. He was prescribed glasses for seeing long distance. "The eye doctor reported to [the minor's] foster parents that early vision issues like what [the minor] has can be from severe iron deficiency at such a young age." The minor was attending kindergarten and was enjoying and doing well in school. He received extra help in math and reading due to a delay in those areas. He progressed through the expected developmental milestones. He knew his colors and shapes and was learning how to write his name. The minor had developed his own personality but had been experiencing issues with anxiety and expressing his feelings. He was receiving individual counseling to help with those issues.

¶ 10    The minor did not fully understand his current situation. He considered his foster parents as his mom and dad as they are the only family he remembered caring for him. He had developed a strong bond with his foster parents and his extended foster family. The minor had not had any contact with the respondent since September 2019, and he never mentioned her. He had not been able to form any type of significant bond with her. However, he had a strong relationship with his foster parents, who he calls mommy and daddy. He was very affectionate towards his foster parents and clearly loved them and was comfortable around them. The minor stated that he was very happy and loved his foster family. The report stated that it was in the best interest of the minor that the respondent's parental rights be terminated.

¶ 11    At the hearing, Melissa Shaw testified that she authored the best interest report and was a caseworker for Children's Home. She stated that all of the minor's needs were being provided for by the foster parents. He looked to the foster parents for safety and security, and they had a very strong, loving bond. There was an older boy in the house that the minor referred to as his brother.

4

Shaw stated that the minor did not have a bond with the respondent. The minor's bond with his foster parents was stronger than what he had with his biological parents. The foster parents stated that they would like to adopt the minor and make him a part of their family. She stated that it was in the minor's best interest to change the permanency goal to adoption and terminate his biological parents' parental rights.

¶ 12     On cross-examination, she agreed that COVID protocol required them to do video and phone calls for a period of time, which she stated were not as good as in person calls. However, she stated that there were not any visits between the respondent and the minor, whether video, phone, or in person. The respondent was not in contact with the caseworker. A couple of times they would schedule meetings to discuss the case and initiate visits, but the respondent failed to call in for the meetings.

¶ 13     The respondent testified that she had completed her psychological evaluation and parenting class and had obtained stable housing at her mother's home. She also did a substance abuse treatment program and drug drops, which she showed via a letter from May 2019. She also testified that she saw a psychiatrist for medication and anger management and entered into evidence a visit from December 2020 which included a "risk assessment history" with dates from December 2018 until December 2020. She stated that she just got a job the day before and would be able to support the minor. The respondent said that, when she still attended visits, they "were amazing." The minor called her "momma" and would run to see her. When they said goodbye, she would tell him to be strong, and he would not cry. She took the minor's paternal grandmother to visit, and the minor was able to see his maternal grandmother once. He has met other members of his extended family, and the respondent believed that he would recognize them. The respondent stated that the minor had an autistic older brother who had been looking for him. She said she loves her son and the

only thing she was guilty of was trusting the minor's father. The respondent asked the court not to terminate her parental rights.

¶ 14    The guardian *ad litem* (GAL) recommended that the court find it in the minor's best interest to terminate the rights of both parents, stating that the statutory factors favored termination. The GAL noted that there was no indication that either parent would be able to provide for the physical safety and welfare of the minor. The minor had spent significant time with his foster parents, and they were able to provide for his safety and welfare. The minor had not seen the respondent for two years but had a strong bond with his foster parents. His current placement was the least disruptive placement for him, and he needed permanence.

¶ 15    The court stated that he agreed with the GAL's recitation of some of the factors and stated that the statutory factors favor the current placement, and the best interest for the minor would be the termination of his biological parents' parental rights. The respondent appeals.

¶ 16                                II. ANALYSIS

¶ 17    On appeal, the respondent solely argues that the trial court's finding that it was in the minor's best interest to terminate her parental rights was against the manifest weight of the evidence.

¶ 18    When determining the child's best interest, the circuit court must consider the following statutory factors: (a) the physical safety and welfare of the child, including food, shelter, health, and clothing; (b) the development of the child's identity; (c) the child's background and ties, including familial, cultural, and religious; (d) the child's sense of attachment; (e) the child's wishes and long-term goals; (f) the child's community ties; (g) the child's need for permanence; (h) the uniqueness of every family and child; (i) the risks attendant to entering and being in substitute care; and (j) the preferences of the persons available to care for the child. 705 ILCS 405/1-3(4.05)

6

(West 2020). At a best interest hearing, the parent's interest in maintaining a relationship with their child must yield to the child's interest in maintaining a stable and loving home. *In re D.T.*, 212 Ill. 2d 347, 364 (2004). The State must prove by a preponderance of the evidence that termination of parental rights is in the best interest of the child. *Id.* at 366. On review, we will not disturb the trial court's determination it is in the best interest of the child to terminate parental rights unless it is against the manifest weight of the evidence. *In re O.S.*, 364 Ill. App. 3d 628, 633 (2006).

¶ 19 After reviewing the statutory factors, it is clear that the court did not err in terminating the respondent's parental rights. The evidence presented through the report and the testimony showed that the physical safety and welfare of the minor, including food, shelter, health, and clothing are met by the foster family. The minor has developed an identity and personality while living in the foster home. He has a strong bond with his foster family, much more so than with his biological parents. His foster parents are the only parents he has really ever known. He was one year and eight months when he was placed with the foster parents and five years old at the time of the best interest hearing. The minor has developed ties with the community. He attends church, goes to kindergarten, and has friends in school and in the neighborhood. The minor is happy, and his foster family wishes to adopt him. It is time to give the minor permanence. See *In re J.L.*, 236 Ill. 2d 329, 344-45 (2010). The respondent has not pointed to any factors that favor reversing the court's order. Accordingly, the court's finding that it was in the best interest of the child to terminate the respondent's parental rights was not against the manifest weight of the evidence.

¶ 20                                                III. CONCLUSION

¶ 21 The judgment of the circuit court of Peoria County is affirmed.

¶ 22 Affirmed.